IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT P. MAGYAR | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JERRY KENNEDY, CLIFFORD PEACOCK, and CLEANAN J. WATKINS | : | NO. 12-5906 |

**MEMORANDUM**

Padova, J.                                                        November 20, 2013

Plaintiff Robert F. Magyar brought this action for Intentional Interference with Contractual Relations (Count One), Defamation (Count Two) and Trade Libel (Count Three) arising out of his business relationship with three members of the Delaware Nation (the "Tribe"). Presently before the Court is Defendants' Motion to Dismiss Count One of the Second Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons stated below, the Motion is denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The Second Amended Complaint alleges the following facts. The Tribe owns and operates Unami Solar, L.L.C. ("Unami") and, through an intermediary called the Delaware Nation Economic Development Authority, L.L.C. ("DNEDA"), Lenape Lighting and Manufacturing, L.L.C. ("Lenape"). (2d. Am. Compl. ¶¶ 8, 13, 15.) On or about the time of Unami's establishment, Plaintiff and the Tribe entered into a consulting agreement pursuant to which Plaintiff would serve as Unami's Operating Manager (the "Unami Agreement"). (Id. ¶ 11, Ex. 3.) In April 2012, Plaintiff and Lenape entered into an employment agreement pursuant to which Plaintiff would serve as Lenape's interim CEO (the "Lenape Agreement"). (Id. ¶ 17, Ex.

6.) The Tribe's Constitution, the Unami Operating Agreement, the DNEDA Operating Agreement and the Lenape Operating Agreement all require that certain actions by those entities be approved by a majority vote of certain of those entities' executive committees or boards of directors. (Id. ¶¶ 7, 10, 14, 16.)

In June 2012, Defendants Cleanan J. Watkins ("Watkins"), the Tribe's Vice President, and Clifford Peacock ("Peacock"), the Tribe's Treasurer, staged a "*coup d'état*, ousting the Tribe's president, Kerry Holton." (Id. ¶ 18.) Defendants then prevented the Tribe from paying Plaintiff his monthly consulting fees, salary, expenses, and other remuneration under the Unami and Lenape Agreements. (Id. ¶ 20.) On or about August 3, 2012, Defendant Jerry Kennedy ("Kennedy"), the Tribe's Executive Director, CEO, and Controller of the DNEDA, told Plaintiff by telephone that his contracts with the Tribe had been terminated. (Id. ¶ 18, 22.)

As of June 2012, when Defendants disrupted, interfered with and constructively destroyed Plaintiff's Unami and Lenape Agreements, Plaintiff was being paid $7,750 per month for his work as Unami's Operating Manager and $3,500 per month for his work as Lenape's interim CEO. (Id. ¶¶ 23-24.) At that time, Plaintiff had a reasonable basis to expect that his relationship with the Tribe and Lenape would continue into the future. (Id. ¶ 25.) He had never been informed verbally or in writing that there was any dissatisfaction in his work for Unami or Lenape. (Id.) On or about November 14, 2012, Peacock used his Facebook page to accuse Plaintiff of bribing and providing kickbacks to Holton. (Id. ¶ 26.) A few days later, Peacock again disparaged Plaintiff on Facebook. (Id.)

Plaintiff filed the initial Complaint in this action on October 17, 2012 and Plaintiff filed an Amended Complaint on November 26, 2012. Defendants moved to dismiss the Amended Complaint in its entirety. Following oral argument, we granted the motion to dismiss as to Count

One of the Amended Complaint and denied it as to Counts Two and Three. (2d Am. Compl. ¶1.) We also permitted Plaintiff to file a Second Amended Complaint, amending his allegations as to Count One. (Id.) Plaintiff subsequently filed the Second Amended Complaint, asserting claims for Intentional Interference with Contractual Relations against all Defendants (Count One), Defamation against Peacock (Count Two), and Trade Libel against Peacock (Count Three). Defendants then filed a Motion to Dismiss Count One of the Second Amended Complaint for lack of subject matter jurisdiction. We held a hearing on the Motion on November 5, 2013.

## II.  LEGAL STANDARD

Defendants have moved to dismiss Count One for lack of subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may challenge the court's jurisdiction on either "factual" or "facial" grounds. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884 (3d Cir. 1977)). Defendants informed the Court during a July 22, 2013 telephone conference that the motion asserts a facial challenge to the Court's subject matter jurisdiction. In reviewing a facial challenge, we "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Nichole Medical Equipment & Supply, Inc. v. TriCenturion, Inc., 694 F.3d 340, 347 (3d Cir. 2012) (quoting Gould Elecs., 220 F.3d at 176). Furthermore, "the trial court must consider the allegations of the complaint as true." Mortensen 549 F.2d 884, 891 (3d Cir. 1977). "[T]he standard for surviving a 12(b)(1) motion is lower than that for a Rule 12(b)(6) motion." Gould Elecs., 220 F.3d. at 178 (citation omitted). "The plaintiff has the burden of persuasion to convince the court it has jurisdiction." Id. (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). "A claim may be dismissed under Rule

12(b)(1) only if it clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." Id. (internal quotations omitted).

## III. DISCUSSION

Defendants argue that Count One of the Second Amended Complaint must be dismissed because, as tribal officials sued in their official capacity, they have sovereign immunity with respect to this claim. (Defs.' Mem. at 5.) "[S]overeign immunity is 'a jurisdictional bar which deprives federal courts of subject matter jurisdiction.'" Royer v. Pennsylvania, No. 11-318, 2011 WL 2884804, at *2 (W.D. Pa. July 15, 2011) (quoting Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2, 694 (3d Cir. 1996). Plaintiff argues that Defendants are not entitled to sovereign immunity because, although they were tribal officials, they were not acting within the scope of their authority and within their official capacity. (Pl.'s Resp. at 10.)

    A.    <u>Sovereign Immunity of Tribal Officials</u>

It is well established that "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories. Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991) (quoting Cherokee Nation v. Georgia, 8 L.Ed. 25 (1831)) (additional citation omitted). Plaintiff, however, has not brought suit against the Tribe itself. Instead, Plaintiff has sued Tribal officials for monetary damages. Tribal officials are entitled to sovereign immunity when they "act in their official capacity and within the scope of their authority." Imperial Granite Co. v. Pala Band of Mission Indians, 940 F.2d 1269, 1271 (9th Cir. 1991) (citations omitted). See also Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1471 (8th Cir. 1994) (stating that "when a complaint alleges that 'the named officer defendants have acted outside the

4

amount of authority that the sovereign is capable of bestowing, an exception to the doctrine of sovereign immunity is invoked . . .'") (quoting Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty., 991 F.2d 458, 460 (8th Cir. 1993)); Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida, 177 F.3d 1212, 1225 (11th Cir. 1999) (footnote omitted); Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 30 (1st Cir. 2006) (citing Tamiani Partners, 177 F.3d at 1225, n.16); In re Diet Drugs, Civ. A. No. 99-20593, 2000 WL 1599259, at *3 (E.D. Pa. Oct. 26, 2000) (citing Puyallup Tribe, Inc. v. Dep't of Game, 433 U.S. 165, 173 (1977)) (remaining citations omitted). Thus, our subject matter jurisdiction over Plaintiff's claim for intentional interference with contractual relations depends on whether the Second Amended Complaint adequately alleges that Defendants acted outside of the scope of their official capacity and beyond the scope of their authority when they terminated Plaintiff's contracts and refused to pay Plaintiff for the services he provided.

B. The Defendants' Official Capacities and Authority

Plaintiff argues that Defendants have not shown that they are entitled to sovereign immunity because the Second Amended Complaint alleges that Defendants acted beyond their official capacities and outside the scope of their authority in two ways. First, Defendants failed to secure a majority vote of the Tribal Executive Committee prior to preventing the Tribe from paying Plaintiff and prior to terminating the Unami Agreement with Plaintiff. (2d. Am. Compl. ¶¶ 20, 21.) Second, Defendants failed to secure a majority vote of the Lenape Board of Directors prior to preventing Lenape from paying Plaintiff and prior to terminating the Lenape Agreement. (Id.)

1. <u>The Unami Agreement</u>

Plaintiff contends that the Second Amended Complaint alleges that a majority vote of the Tribal Executive Committee is required to prevent the Tribe from paying Plaintiff pursuant to the Unami Agreement and to terminate the Unami Agreement. Plaintiff relies on the allegation that "[t]he Tribe's Executive Committee possesses specifically enumerated powers set forth in the Constitution. These powers, however, must be exercised by **<u>a majority vote</u>** of the Executive Committee," because the Tribe's Constitution grants the Executive Committee the power to enter into and enforce contracts. (2d. Am. Compl. ¶ 7; Ex. 1, Art. 6, § 1(e).) Plaintiff further relies on allegations that "the Tribe -- by and through its Executive Committee -- had not taken any official action on Plaintiff's Unami contract as required by the Tribe's Constitution" and that Defendants' "official capacities as defined by the Constitution did not enable them to take these actions unilaterally and without authorization." (2d. Am. Compl. ¶¶ 59, 61.)

The Tribe's Constitution, which is referred to in the Second Amended Complaint and attached thereto as Exhibit 1, states that the Executive Committee has the power "[t]o negotiate with Federal, State or local governments and enter into, perform and enforce contracts, grants, joint ventures and other agreements." (<u>Id.</u> ¶ 7; Ex. 1, Art. 6.) During the November 5, 2013 hearing on this Motion, Plaintiff explained that, in his view, Article 6 of the Tribal Constitution encompasses the power to terminate contracts and to prevent the payment of money for services rendered in connection with those contracts. Accordingly, Plaintiff maintains that, in the absence of Executive Committee action, Defendants lacked the authority to terminate the Unami Agreement and to prevent the Tribe from paying him.

Defendants contend that a majority vote of the Tribal Executive Committee is not required to terminate contracts or to prevent the Tribe from paying Plaintiff. During the

November 5, 2013 hearing on this Motion, Defendants asserted that the Tribe had delegated the authority to terminate contracts and to make payroll decisions to the DNEDA, which, in turn, delegated that authority to Kennedy, the DNEDA's CEO. They have not, however, referred us to any part of the Second Amended Complaint or its Exhibits that support this assertion.[1]

As discussed above, in considering facial challenges to subject matter jurisdiction, we consider only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Nichole Med. Equip., 694 F.3d at 347 (quoting Gould, 220 F.3d at 176). Since Defendants have not -- either in their Motion or during the November 5, 2013 hearing -- pointed to any part of the Second Amended Complaint or its Exhibits that contradict the allegations in the Second Amended Complaint that a majority vote of the Executive Committee is required to terminate Plaintiff's contract, and because we must accept the allegations of the Second Amended Complaint as true, we conclude that the Second Amended Complaint alleges that Defendants acted outside the scope of their authority as officers of the Tribe when they terminated the Unami Agreement and stopped paying Plaintiff pursuant to that Agreement.

        2.      <u>The Lenape Employment Agreement</u>

Plaintiff maintains that the Second Amended Complaint alleges that Defendants exceeded the scope of their Tribal authority by terminating the Lenape's Agreement and by preventing Lenape from paying Plaintiff without the approval of a majority of Lenape's Board of Directors. Plaintiff relies on allegations that "management of Lenape is vested in a five (5) member Board

---

[1] Defendants rely on the Tribe's power "[t]o establish subordinate organizations for economic or social welfare purposes and to delegate to such organizations or to any subordinate boards, committees, or officials of the Tribe, specific powers of the Delaware Executive Committee, reserving the right to review any action taken by virtue of such delegated power." (2d. Am. Compl., Ex. 1, Art. 6.) They do not, however, point to any part of the Second Amended Complaint or its Exhibits that demonstrate that such a delegation of authority occurred.

of Directors, **a majority** of which is required to take action" and that Defendants were not authorized to terminate their employment agreement with Plaintiff because "Lenape's Board of Directors had not acted by a majority vote to terminate Plaintiff's Lenape agreement." (2d. Am. Compl. ¶¶ 16, 21.)  Plaintiff further relies on the allegation that "all Defendants prevented the Tribe and Lenape from paying Plaintiff his monthly consulting fees, salary, expenses and other remuneration." (Id. ¶ 20.)

Defendants deny that their actions were unauthorized for two reasons.  First, they contend that the termination of Plaintiff's employment agreement was authorized because both the DNEDA and the Tribal Executive Committee voted to terminate their relationship with Plaintiff.  Indeed, Defendants claim that the DNEDA Board of Directors voted to terminate Plaintiff's services with the Tribe on July 25, 2012, and that the Tribal Executive Committee did the same on August 15, 2012.  (Defs.' Mem. at 4-5 (citing Kennedy Decl. Ex. C; Watkins Decl. Ex. A).)

Second, Defendants argue that Kennedy was acting within the scope of his authority as the CEO of DNEDA when he directed the DNEDA not to pay Plaintiff's June invoice.  Defendants assert that Kennedy directed that Plaintiff's June 2012 invoice not be paid because Plaintiff "had told the DNEDA Board of Directors that he would be paid by a Bureau of Indian Affairs grant through the end of June 2012" and because Plaintiff "had told the DNEDA Board of Directors that he was going to sign a new contract between himself and the DNEDA in July 2012." (Id. at 10; Kennedy Decl. ¶¶ 12-13.)  Defendants aver that Kennedy's authority to act on behalf of the DNEDA includes "accounts payable, hiring and payment of employees and consultants as well as the day-to-day management of the DNEDA."  (Id. (citing Kennedy Decl. 13).)

The facts upon which Defendants rely are not, however, before us. As Defendants have chosen to proceed on a <u>facial</u> challenge to subject matter jurisdiction, we may "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." <u>Nichole Med. Equip.</u>, 694 F.3d at 347 (quoting <u>Gould</u>, 220 F.3d at 176). Furthermore, we "must consider the allegations of the complaint as true." <u>Mortensen</u> at 891. Plaintiff's Second Amended Complaint alleges that a majority vote of the Lenape Board of Directors is required to take any action and that no such vote took place before Kennedy terminated the Lenape Agreement. (2d. Am. Compl. ¶¶ 16, 21). Defendants' arguments to the contrary -- specifically, that such a vote occurred and that Kennedy was justified in refusing to pay Plaintiff -- rely on facts not found in the Second Amended Complaint and its Exhibits. Accordingly, we cannot consider those facts. As a result, we conclude that the Second Amended Complaint alleges that Defendants acted outside the scope of their authority when they terminated the Lenape Agreement and refused to pay Plaintiff for the services he rendered for Lenape in June 2012.

Thus, based upon an examination of the Second Amended Complaint and its Exhibits, we determine that Plaintiff has met his burden to convince us that Defendants acted beyond their official capacity and outside the scope of their authority when they terminated Plaintiff's Agreements and failed to compensate Plaintiff for the services he rendered in June 2012. Accordingly, we conclude that the Second Amended Complaint alleges facts sufficient to persuade us that Defendants are not protected by sovereign immunity in connection with Count One of the Second Amended Complaint.

**IV. CONCLUSION**

For the reasons stated above, the Motion to Dismiss Count One of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is denied. An appropriate order follows.

BY THE COURT:


/s/ John R. Padova\_\_\_\_\_
John R. Padova, J.